John L. HILZENDAGER, Plaintiff
and Appellee,

v.

Walter S. SKWAROK, Defendant
and Appellant,

Monroe Chase, Kenneth Reed, C.H. Oldenburg, Ernest R. Morgan, Robert Chase, Holiday Leasing & Investment, Inc. and Holiday Air of America, Inc., Defendants.

John L. HILZENDAGER, Plaintiff
and Appellee,

v.

Walter S. SKWAROK, Monroe Chase, Kenneth Reed, Ernest R. Morgan, Robert Chase, Holiday Leasing & Investment, Inc., and Holiday Air of America, Inc., Defendants,

C.H. Oldenburg, Defendant
and Appellant.

John HILZENDAGER, Plaintiff
and Appellee,

v.

Walter S. SKWAROK, C.H. Oldenburg, Ernest R. Morgan, Holiday Leasing & Investment, Inc., and Holiday Air of America, Inc., Defendants,

Monroe Chase, Kenneth Reed and Robert Chase, Defendants and Appellants.

Civ. Nos. 10309–10311.

Supreme Court of North Dakota.

June 24, 1983.

William J. Daner, Bismarck, for plaintiff and appellee, John L. Hilzendager.

Ronald Schwartz, Hebron, for defendant and appellant Walter S. Skwarok.

Benjamin C. Pulkrabek (argued), of Pulkrabek & Tuntland, Mandan, for defendants and appellants Monroe Chase, Robert Chase, and Kenneth Reed.

Alfred C. Schultz, Bismarck, for defendant and appellant C.H. Oldenburg.

PAULSON, Justice.

█ This is an appeal from a judgment of the District Court of Burleigh County entered on August 9, 1982.[1] The district court awarded the plaintiff, John L. Hilzendager, the sum of $36,000 plus interest at the rate of nine percent per annum as well as costs and disbursements against the corporate defendants Holiday Air of America, Inc. [Holiday Air] and Holiday Leasing & Investment, Inc. [Holiday Leasing]. The court further found the individual defendants Walter S. Skwarok, Monroe Chase, Kenneth Reed, C.H. Oldenburg, Ernest R. Morgan, and Robert Chase jointly and severally liable to the above-named corporate defendants for the same amount. We affirm in part, reverse in part, and remand the case to the district court for the purpose of entering the judgment in a manner consistent with this opinion.

The facts of this case, as found by the trial court, may be summarized as follows:

Holiday Air was granted its corporate charter by the Secretary of State of North Dakota on September 19, 1967. One of its corporate purposes was to provide travel opportunities to qualified individuals. The incorporators and first directors of Holiday Air were Kenneth Reed, Monroe Chase, and Ernest R. Morgan. The total authorized capitalization of the corporation was to be $25,000 and the aggregate number of shares

---

1. The defendants have also attempted to appeal from the district court's order denying their motions to vacate the judgment, which order they claim was "entered" on September 20, 1982. At the close of the hearing, on September 20, 1982, on the defendants' motions to vacate the judgment, the district court orally denied the motions. The record reveals that written orders denying the motions were never entered by the district court.

An oral ruling made by the trial court from the bench is not an appealable order. *State v.*

*Jensen,* 333 N.W.2d 686, 689–690 (N.D.1983); *State v. Gasser,* 306 N.W.2d 205, 207–208 (N.D. 1981). Therefore, the defendants' appeals from the district court's denials of their motions to vacate the judgment are dismissed.

We note that, in any event, the same issues have been raised by the defendants both in their appeals from the judgment and in their attempted appeals from the denial of the motions to vacate the judgment.

which the corporation had authority to issue was 25,000 shares of common stock.

Before Holiday Air could operate and provide travel opportunities, an "FAA 123 Certificate" for carrying passengers was required, along with the lease of at least one airplane. Holiday Air purchased the "FAA 123 Certificate" for $40,000. Federal regulations, however, required that the airplane and the certificate could not be owned by the same organization. Thus, Holiday Leasing was organized on April 26, 1971. The pre-incorporation agreement for Holiday Leasing was signed by C.H. Oldenburg, Ernest R. Morgan, Monroe Chase, Robert Chase, Kenneth Reed, and Walter Skwarok. Such agreement provided for a subscription of $28,000 by each of the signers and in return for each signer paying $28,000, he would receive 28,000 shares of Holiday Leasing stock. Holiday Leasing was chartered and capitalized, however, at $200,000 with 200,000 shares of stock. Although the stock transfer ledger of Holiday Leasing lists each individual as having paid in $28,-000, the money was never actually paid into the corporation.

The manner in which Holiday Leasing was to conduct business was for it to own and operate the airplane and to lease the airplane to Holiday Air. Holiday Leasing was to own 80 percent of Holiday Air. The corporate record book for Holiday Air, however, has since disappeared.

On April 19, 1971, shortly before its corporate charter was issued, Holiday Leasing purchased an airplane, a Vickers Armstrong Viscount 745D, from Capitol Aviation Equipment Corporation for $95,000. Before the airplane could be used for passenger service, refurbishment, engine repair, and pressurization of the aircraft was required. These costs exceeded $190,000 and were paid for mainly by Skwarok and Oldenburg. In order to obtain additional funding, Holiday Leasing hired and paid commissions and fees to James Collins and Carl Weiser to find individuals who were willing to loan money to the corporation. One of the individuals found who was willing to loan money to the corporation was John L. Hilzen-dager. Hilzendager agreed to loan Holiday Leasing the sum of $36,000 in return for a three-year corporate debenture bond at an interest rate of 9 percent per annum and with a due date of May 1, 1975. The corporate debenture, dated April 13, 1972, made Hilzendager a preferred creditor over any of Holiday Leasing's general creditors and stockholders and subordinate only to lending institutions as creditors.

Following the issuance of Hilzendager's corporate debenture, Holiday Air and Holiday Leasing continued to meet with financial difficulties. Debts kept accumulating despite an almost constant influx of capital from Skwarok and Oldenburg. Skwarok testified that his investment eventually exceeded $300,000. Oldenburg invested approximately $40,000 and Reed invested $2,500 personally.

During this period of time the corporate minute books of both corporations were not kept current. Money was routinely transferred between or deposited in either Holiday Air's or Holiday Leasing's accounts, as is evidenced by Hilzendager's $36,000 loan being deposited in Holiday Air's account although the loan was actually made to Holiday Leasing. Many of the corporate records have since disappeared, together with defendant Ernest R. Morgan. As the trial court noted, the corporate problem at the time was a complex one:

"... the corporation could produce no income without members, there could be no members without a 123 certificate utilization, and there could be no certificate utilization until the plane was operational."

In 1973, the corporate businesses of Holiday Air and Holiday Leasing continued to flounder. In an apparent attempt to recoup some of his losses by controlling the spending so that none of the money "would be flimflammed away", Skwarok entered into several agreements with the two corporations with the knowledge and participation of defendants Reed, Robert Chase, Monroe Chase, and Oldenburg, who were the other officers and directors of Holiday Air and Holiday Leasing.

Skwarok was permitted signature control over both checkbooks. It was also agreed at a board meeting in Hebron at which Reed, Robert Chase, Monroe Chase, Oldenburg, and Skwarok were present, that title to the airplane would be transferred from Holiday Leasing to Skwarok. At the time, the airplane, despite its many outstanding costs, was the sole significant asset of Holiday Leasing. According to the agreement, the airplane would be transferred to Skwarok on May 27, 1973, conditioned on the following: (1) that Skwarok would refinance the airplane using his personal guarantee and credit with a bank in Michigan; (2) that the airplane would again be leased to Holiday Air in order to keep the "FAA 123 Certificate" valid; and (3) that Holiday Leasing would have a "buy-back" agreement with Skwarok regarding the airplane.[2]

The trial court found that at this time the sole significant assets of Holiday Air were the "FAA 123 Certificate" and the lease it had on the airplane. Holiday Air, however, never made the monthly lease payments on the airplane. In addition, although all of the directors agreed to the eventual return of the airplane to Holiday Leasing, the "buy-back" agreement was apparently never signed by either Holiday Leasing or Skwarok. Testimony indicated that Skwarok later refused to sign the agreement and the document itself was never introduced in evidence.

In 1974, the financial conditions of both Holiday Air and Holiday Leasing worsened, so Skwarok began seeking a buyer for the airplane. It is evident that the fact that Skwarok was seeking a buyer for the airplane was known to at least Monroe Chase, who served as president of Holiday Leasing and as director of Holiday Air. In a letter dated May 6, 1974, Monroe Chase in his capacity as an owner and operator of Commander Aviation offered to consign the aircraft for sale at $425,000. Kenneth Reed

was also a stockholder and operator of Commander Aviation.

On May 1, 1975, Hilzendager's $36,000 corporate debenture with Holiday Leasing became due, almost two years after the transfer of the airplane to Skwarok. However, Holiday Leasing had no funds with which to repay Hilzendager.

Skwarok eventually sold the airplane to John Wesley College in Michigan on November 14, 1975. The bank in Michigan financed the transaction and retained a chattel mortgage in the amount of $333,-743.21. The purchase price of the airplane was $240,000. Of this selling price, $174,000 was paid to Skwarok when the airplane was delivered to the college and the balance of $66,000 was to be paid at a later date. Skwarok used the $174,000 to pay indebtedness and expenses incurred on the airplane. However, the $66,000 owed to Skwarok by the college was never paid because the college went bankrupt.

Thus, at this point, the sole asset of Holiday Leasing, i.e., the airplane, no longer existed as such; and the sole assets of Holiday Air, i.e., the "FAA 123 Certificate" and the lease on the airplane, were likewise nonexistent.

No action was ever undertaken by the defendants as directors and officers of the corporations to enforce Holiday Leasing's agreement or by Holiday Air and Holiday Leasing to prevent Skwarok's sale of the airplane to the college. Monroe Chase testified that, had the airplane been retained by the defendants, its present value would be approximately $3.5 million.

In a letter dated November 1, 1975, the Secretary of State of North Dakota terminated the charter of Holiday Leasing, subject to reinstatement under the provisions of § 10–21–13.1, of the North Dakota Century Code. The charter of Holiday Leasing was not reinstated.

---

2. Kenneth Reed testified as follows regarding the ramifications of the "buy-back" agreement:
    "A. ... Holiday Air of America would lease the airplane, make the payments, fly the aircraft. At the end of the duration of the lease, Leasing—Holiday Leasing and Investment, Incorporated would buy it back for one dollar."

On December 11, 1978, Hilzendager brought suit against Skwarok to recover the $36,000 loaned to Holiday Leasing. An amended summons and complaint was filed with the district court on June 24, 1981, naming Monroe Chase, Robert Chase, Reed, Oldenburg, Morgan, Holiday Leasing, and Holiday Air as additional defendants. Hilzendager alleged in the amended complaint that the funds and activities of the defendant corporations were "intermingled and managed by the individual Defendants ... so that the assets were wasted and disbursed in a manner to prevent collection of debts accrued or accruing to Defendant Holiday Leasing & Investment, Inc., and without an accounting, all to the detriment of creditors, particularly Plaintiff". Hilzendager also alleged in the amended complaint that the conveyance of the airplane to Skwarok was made "without making adequate provision for known debts and obligations", and "with deliberate intent to hinder, delay, and defraud creditors" of the defendant corporations and that the individual defendants had "actual or constructive knowledge of the fraudulent transaction as officers, directors, or managers, in conjunction with Defendant Skwarok in allowing him to obtain said aircraft".

The case was tried to the court without a jury on March 23 and 24, 1982. On July 15, 1982, the trial court issued its findings of fact, conclusions of law, and order for judgment. The trial court determined that Hilzendager had been defrauded by the individual defendants. The court concluded that the fraud occurred on November 14, 1975, when Skwarok sold the airplane to John Wesley College. The court reasoned that the failure of the directors and officers of Holiday Leasing to take any action to recover the asset or make provisions for Hilzendager's matured claim, coupled with their knowledge of the transaction, which preferred a shareholder/director over a creditor, constituted "a fraud upon the plaintiff, the purpose of their actions being to avoid his claim and preferring one of

their own". The court thus concluded that the nonaction of the directors caused Holiday Leasing to become insolvent and that by such assent the directors violated § 10–19–47(3), N.D.C.C. Because the fraud did not occur until November 14, 1975, the court further determined that Hilzendager's action was not barred by the six-year statute of limitations.[3] See § 28–01–16(1), N.D.C.C.

The court also concluded that Holiday Leasing was liable to Hilzendager because it had received the loan. Holiday Air was liable on the note, the court reasoned, because it did nothing to retain its right to enforce the written lease with Skwarok and because the directors, which were virtually identical between the two corporations, "never treated the corporations separately and distinctly but merged them in all of their dealings". The court concluded its findings of fact, conclusions of law, and order for judgment as follows:

> "The liability of the individual directors under § 10–19–47(3) is personal, and joint and several *to the corporations* in their capacity as officers and directors. [Emphasis in original.]

> "However, there is no justification for this court to 'pierce the corporate veil' and find direct personal liability of the individual defendants to the plaintiff. There is no evidence that the plaintiff ever believed he was dealing with the individual defendants in their individual capacity and not as representatives of either corporation.

### "ORDER FOR JUDGMENT

> "The plaintiff will have judgment for $36,000 plus interest at 9 percent per annum from and after May 1, 1975, against Holiday Air, Incorporated, and Holiday Leasing and Investment, Incorporated, and the defendants M. Chase, R. Chase, Reed, Morgan, Oldenburg, and Skwarok shall be personally liable to the

---

**3.** The court also stated that the statute of limitations would nevertheless have been tolled until discovery of the fraud by the plaintiff, which Hilzendager claimed to have happened on June 20, 1980, at Skwarok's deposition. See § 28–01–16(6), N.D.C.C.

corporations for such amount, jointly and severally."

Judgment was entered on August 9, 1982. Shortly thereafter, the individual defendants brought motions to vacate the portion of the judgment relating to their personal liability to the two corporate defendants. Such motions were denied. The individual defendants appeal.

The major contention of the defendants in this appeal is that, because neither Holiday Leasing nor Holiday Air ever filed with the court or served any of the parties to the action any written documents or appeared at any of the court proceedings, the trial court erred in awarding judgment in favor of the corporations against the individual defendants. Before addressing this contention, we first turn to a preliminary issue raised by Skwarok.

Skwarok contends that the trial court did not obtain jurisdiction over the corporate defendants because Oldenburg, who admitted service for Holiday Air and Holiday Leasing, was no longer the registered agent for the corporations. The record reflects that on January 10, 1975, Oldenburg addressed a letter to the Secretary of State which states that he "hereby resigns from the Board of Directors and as an officer of Holiday Leasing and Investment, this resignation to be effective immediately". Another letter from Oldenburg to the Secretary of State, dated January 10, 1975, states that he "hereby resigns as the secretary, vice-president, a director, and any other offices held by him, in the Holiday Air of America, Inc., this resignation to be effective as of January 2nd, 1975". We believe neither document was sufficient to constitute a resignation as the registered agent of either corporation.

Section 10–19–10(2), N.D.C.C., provides as follows:

"2. Any registered agent of a corporation may resign as such agent upon filing a written notice thereof executed in duplicate with the secretary of state, who shall forthwith mail a copy thereof to the corporation at its registered office. The appointment of such agent shall terminate upon the expiration of thirty days after receipt of such notice by the secretary of state."

■ A perusal of our Business Corporation Act reveals that there is no requirement that a registered agent of a corporation simultaneously serve as an officer or director of such corporation. *See, e.g.,* §§ 10–19–09, 10–19–10, and 10–19–11, N.D. C.C. Thus, because Oldenburg resigned as an officer and director of the corporations rather than specifying that he also intended to resign as their registered agent, as is required by § 10–19–10(2), N.D.C.C., he remained their registered agent and properly accepted service of process for the corporations. It follows that the trial court obtained jurisdiction over the corporate defendants in this case.

As noted earlier herein, the defendants' major contention is that the court erred in awarding judgment in favor of the corporate defendants against the individual defendants as officers and directors of such corporations because neither of the corporations made an appearance in the court proceedings or brought suit against them. Hilzendager argues that the district courts are courts of law and equity combined, and may decide issues and liabilities fairly presented to them when all of the parties have had an ample opportunity to be heard and to raise whatever defenses applicable. In support of this proposition, Hilzendager cites § 27–05–06, N.D.C.C. Hilzendager argues in the alternative that the judgment should be allowed to stand but that it be amended to impose direct liability upon the individual defendants because the facts in this case justify "piercing the corporate veil".

■ We agree with the defendants that it was improper for the trial court to enter judgment in favor of Holiday Air and Holiday Leasing against the individual defendants. In *Robertson's Inc. v. Renden,* 189 N.W.2d 639 (N.D.1971), our court held that a corporate judgment creditor had no standing to bring an action on behalf of its corporate judgment debtor against a director of the latter corporation for alleged

wrongful conduct of the director in making distribution of assets of the latter corporation at a time when the corporation was insolvent or when such a distribution would have rendered the corporation insolvent. Furthermore, it is undisputed in the instant case that neither of the corporate defendants either instituted an action against the individual defendants or even made an appearance in the proceedings. Although we agree that our district courts are courts of law and equity combined and that they may decide issues and liabilities fairly presented to them, we do not believe that this power can be extended so far as to circumvent the most basic rules of civil procedure. Accordingly, we conclude that the district court erred in awarding judgment in favor of Holiday Air and Holiday Leasing against the corporate directors and officers.

However, we also agree with Hilzendager's contention that the facts in this case justify "piercing the corporate veil". The trial court determined that there was no justification to "pierce the corporate veil" because the court found no evidence that Hilzendager ever believed he was dealing with the individual defendants in their individual capacities and not as representatives of either corporation.[4] The trial court's asserted ground for not finding the individual defendants directly liable to Hilzendager, however, is not the only justification for disregarding the corporate entity.

■ It is the general rule that officers and directors of a corporation are not generally liable for the ordinary debts of the corporation. *Danks v. Holland*, 246 N.W.2d 86, 90 (N.D.1976). However, in *Schriock v. Schriock*, 128 N.W.2d 852, 866 (N.D.1964), our court stated:

" '. . . but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.'

Fletcher, Private Corporations Sec. 41 (1963 rev. vol.)."

*See also Danks v. Holland, supra; Family Center Drug v. North Dakota St. Bd. of Pharm.*, 181 N.W.2d 738, 745 (N.D.1970).

■ It has also been held that factors considered significant in determining whether or not to disregard the corporate entity include: insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and the existence of the corporation as merely a facade for individual dealings. *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979).

We believe the facts in the instant case, recited earlier herein, are clearly sufficient for disregarding the corporate entity and holding the directors and officers of Holiday Air and Holiday Leasing personally liable.

The record is replete with examples of the defendants' disregard for corporate formalities. The corporate minute books of both corporations were not kept current. Many of the corporate records have disappeared. The record also indicates that several of the defendants were unaware of and unconcerned about their various duties as directors and officers. Funds and assets of both corporations were commingled and disbursed haphazardly. The directors of Holiday Leasing allowed the conveyance of its sole significant asset, the airplane, to Skwarok, who was another director of the corporations. As the trial court concluded, however, the ultimate fraud occurred when Skwarok sold the airplane to the college and the other officers and directors failed to take any action to recover the asset or

---

**4.** In *Gray v. Elder*, 61 N.D. 672, 240 N.W. 477 (1932), our court held that the managing officer of a corporation is liable as a principal, even though acting for the corporation, when he deals with one ignorant of the existence of the corporation and of the relation between the officer and the corporation, and when such officer fails to inform the other party to the contract that he is acting for and on behalf of the corporation.

make other provisions for Hilzendager's matured claim. These examples are not an exhaustive recitation of the improprieties which occurred. The record in the instant case convinces us that to allow the individual defendants to escape liability because they were doing business under a corporate form would result in allowing them an advantage they do not deserve.

■ One issue remains.[5] Prior to trial, Hilzendager and Oldenburg entered into a stipulation for dismissal with prejudice based upon a settlement agreement between the parties, pursuant to Rule 41(a)(2) of the North Dakota Rules of Civil Procedure. On February 3, 1982, the trial court entered an order dismissing Hilzendager's action against Oldenburg "on its merits, with prejudice and without costs, the same having been fully settled as between the parties."[6] No cross claims or counterclaims were filed between any of the codefendants and notice of the order of dismissal was served on the other defendants. Nevertheless, the trial court in its judgment found Oldenburg jointly and severally liable. Oldenburg argues that the trial court did not abuse its discretion in executing the order of dismissal with prejudice in view of the settlement agreement and, therefore, that such dismissal terminated Hilzendager's cause of action against him. We agree.

In *Mongeon v. Burkebile*, 79 N.D. 234, 55 N.W.2d 445, 451 (1952), our court stated that:

"The dismissal of an action or proceeding 'with prejudice' commonly implies not only the termination of the particular action or proceeding then before the court but also the right of action upon which it is based. [Citations omitted.] ... From these authorities we conclude that when an order is entered at the request of the plaintiff, understandingly made, dismissing his action 'with prejudice,' the dismissal goes to the cause of

action and becomes res adjudicata with respect to the issues brought before the court by the action."

*See also Phillips-Van Heusen Corp. v. Shark Bros.*, 289 N.W.2d 216, 219–220 (N.D.1980). Accordingly, we conclude that Oldenburg cannot be held personally liable to Hilzendager under the circumstances of this case.[7]

For the reasons stated in this opinion, we affirm the portion of the district court's judgment holding Holiday Air and Holiday Leasing liable to Hilzendager, reverse the portion of the judgment holding the individual defendants personally liable to Holiday Air and Holiday Leasing, and remand the case to the district court with directions to enter judgment holding the individual defendants, except Oldenburg, jointly and severally liable to Hilzendager.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

5. Because of our disposition of this case, we need not address the other issues raised by the parties.

6. The district judge who signed the order dismissing Hilzendager's action against Oldenburg

was not the same judge who presided over the trial.

7. We have decided only the issue of Oldenburg's personal liability to Hilzendager.