# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 237

Eugene E. Taszarek, Marlys J. Taszarek,
Trina E. Schilling, Steven E. Taszarek,
and Michael E. Taszarek,                    Plaintiffs and Appellants

  v.

Lakeview Excavating, Inc., German Township,
and Dickey County,                                          Defendants

    and

Brian Welken,                              Defendant and Appellee

## No. 20210046

Appeal from the District Court of Dickey County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices VandeWalle and McEvers joined. Justice Crothers filed an opinion concurring specially in which Chief Justice Jensen joined.

William C. Black, Bismarck, N.D., for plaintiffs and appellants; submitted on brief.

Douglas W. Gigler, Fargo, N.D., for defendant and appellee; submitted on brief.

**Tufte, Justice.**

[¶1]  Eugene Taszarek, Marlys Taszarek, Trina Schilling, Steven Taszarek, and Michael Taszarek ("Taszareks") appeal from a judgment finding Lakeview Excavating, Inc., was not the alter ego of Brian Welken. The Taszareks argue the district court abused its discretion by exceeding the scope of the remand, and erred by finding Lakeview Excavating was not the alter ego of Welken. We affirm.

I

[¶2]  In 2012, German Township in Dickey County selected Lakeview Excavating as a contractor for certain road construction projects. Welken was Lakeview Excavating's president and sole shareholder. While working on the projects, Lakeview Excavating's employees took fieldstones from a nearby property owned by the Taszareks to use for the roads. The Taszareks sued Lakeview Excavating and Welken for intentional trespass, conversion of property, and unjust enrichment. The claims of trespass and conversion were tried to a jury. The jury returned a verdict in the Taszareks' favor, finding Lakeview Excavating was the alter ego of Welken and holding both parties liable for damages. In *Taszarek v. Welken*, 2016 ND 172, ¶ 26, 883 N.W.2d 880 ("*Taszarek I*"), we reversed and remanded for a new trial, concluding the district court inadequately instructed the jury on the alter ego doctrine.

[¶3]  After a bench trial, the district court found Lakeview Excavating was the alter ego of Welken and ordered the Taszareks could recover damages from either Welken or Lakeview Excavating. In *Taszarek v. Lakeview Excavating, Inc.*, 2019 ND 168, ¶¶ 12-13, 930 N.W.2d 98 ("*Taszarek II*"), we reversed and remanded, concluding the court's findings relating to piercing Lakeview Excavating's corporate veil were inadequate to permit appellate review. On remand, the court held an evidentiary hearing and found Lakeview Excavating was not the alter ego of Welken.

## II

[¶4] The Taszareks argue the district court exceeded the scope of remand by holding an evidentiary hearing instead of specifying findings of fact based on evidence already in the record.

[¶5] "The mandate rule requires the district court to follow the appellate court's pronouncements on legal issues in subsequent proceedings in the case and to carry the appellate court's mandate into effect according to its terms." *Pennington v. Cont'l Res., Inc.*, 2021 ND 105, ¶ 10, 961 N.W.2d 264. We retain "the authority to decide whether the district court scrupulously and fully carried out the mandate's terms." *Id.* We have "repeatedly held that, when we remand for redetermination of an issue without specifying the procedure to be followed, the district court may decide the issue based on the evidence already before it or may take additional evidence." *Sorenson v. Slater*, 2011 ND 216, ¶ 9, 806 N.W.2d 183. "The decision whether to take additional evidence is within the district court's discretion, and its determination will be reversed on appeal only for an abuse of discretion." *Id.*

[¶6] In *Taszarek II*, we did not specify an exact procedure to be followed by the district court on remand. Instead, we remanded "for further findings on the *Hilzendager-Jablonsky* factors and whether Lakeview Excavating was the alter ego of Brian Welken." *Taszarek II*, 2019 ND 168, ¶ 13. We did not limit the court to making findings of fact on evidence already in the record. Thus, the decision whether to take additional evidence was within the court's discretion. The court did not abuse its discretion by holding an evidentiary hearing on the *Hilzendager-Jablonsky* factors concerning piercing the corporate veil.

## III

[¶7] The Taszareks contend Lakeview Excavating was the alter ego of Welken, allowing them to pierce the corporate veil.

[¶8] Generally, a corporation's officers and directors are not liable for the ordinary debts of the corporation. *Hilzendager v. Skwarok*, 335 N.W.2d 768, 774 (N.D. 1983). The general rule may be disregarded, and the corporate veil

pierced, when the corporation is used to defeat public convenience, justify wrong, protect fraud, or defend crime. *Id.* The party attempting to pierce the corporate veil has the burden of proof. *Taszarek II*, 2019 ND 168, ¶ 8. "Piercing the corporate veil is heavily fact-specific and is within the district court's sound discretion." *Id.* "The court's findings of fact are presumed to be correct and will be set aside on appeal only if they are clearly erroneous." *Id.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, a reviewing court is left with a definite and firm conviction a mistake has been made. *Axtmann v. Chillemi,* 2007 ND 179, ¶ 15, 740 N.W.2d 838.

[¶9]   A court must consider the *Hilzendager-Jablonsky* factors when deciding whether to pierce the corporate veil:

> [F]actors considered significant in determining whether or not to disregard the corporate entity include: insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and the existence of the corporation as merely a facade for individual dealings.

*Coughlin Constr. Co. v. Nu-Tec Indus., Inc.*, 2008 ND 163, ¶ 20, 755 N.W.2d 867 (quoting *Hilzendager*, 335 N.W.2d at 774). In addition, "an element of injustice, inequity or fundamental unfairness must be present before a court may properly pierce the corporate veil." *Coughlin Constr.*, at ¶ 20 (quoting *Jablonsky v. Klemm*, 377 N.W.2d 560, 564 (N.D. 1985)).

[¶10] Under the "alter ego" approach to piercing the corporate veil, "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist, and there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Taszarek I*, 2016 ND 172, ¶ 10. This approach analyzes whether a corporation is merely an instrumentality or alter ego of its owner, and requires examination of the *Hilzendager-Jablonsky* factors, including the "injustice, inequity or

fundamental unfairness" element. *Id.* at ¶¶ 10, 12. "Courts should exercise caution in applying the alter ego doctrine." *Taszarek II*, 2019 ND 168, ¶ 7.

[¶11] The district court found all of the *Hilzendager-Jablonsky* factors weighed against piercing the corporate veil, except the "nonpayment of dividends" factor, which it found was irrelevant in this context. The Taszareks do not challenge the district court's findings on two of the factors: nonpayment of dividends and the existence of the corporation as merely a facade for individual dealings.

A

[¶12] The Taszareks argue the district court erred in finding Lakeview Excavating was sufficiently capitalized for the purposes of the corporate undertaking.

[¶13] "In tort cases, particular significance is placed on whether a corporation is undercapitalized, which involves an added public policy consideration of whether individuals may transfer a risk of loss to the public in the name of a corporation that is marginally financed." *Axtmann*, 2007 ND 179, ¶ 14. The Court has recognized "there is a continuing obligation to provide adequate risk capital from incorporation throughout the corporation's existence." *Coughlin Constr.*, 2008 ND 163, ¶ 28.

[¶14] The district court found Lakeview Excavating was an excavation contractor incorporated in May 2010, and was capitalized with a line of credit from Bank Forward for $375,000, which was shared with another company owned by Welken, Lakeview Trucking, Inc. The line of credit was secured by the assets of Lakeview Excavating and Lakeview Trucking, a personal guaranty from Welken, an assignment of Welken's life insurance policy, a personal guaranty from Welken's father, and a guarantee from the Bank of North Dakota, which in turn was guaranteed by Welken.

[¶15] The district court made findings on Lakeview Excavating's finances during its years of operation (May 2010 to December 2014). In 2010, Lakeview Excavating had construction income of $288,003 with construction costs

4

totaling $233,891, leaving a gross profit of $54,112. After expenses, it had a net income of $30,613.

[¶16] In 2011, the company's gross receipts totaled $894,612, and its gross profit was $532,596. After expenses, it had a net operating income of $46,533 and retained earnings of $77,167 going into 2012 for reinvestment into the company or to pay debt.

[¶17] In 2012, Lakeview Excavating's total revenue was $2,447,003, and its gross profit was $1,600,498. Its net operating income was $36,254, and its retained earnings totaled $93,421 going into 2013. It was during the summer of 2012 when Lakeview Excavating took fieldstones from the Taszareks' property.

[¶18] In 2013, its total revenue was $2,531,244, and its gross profit was $1,074,232. Its operating expenses totaled $2,279,647, which included $1,192,457 in payroll expenses. As a result, Lakeview Excavating had a net income loss of $1,243,591 upon completion of the 2013 construction season. The district court attributed this financial downturn to the problems Lakeview Excavating experienced working on the FEMA-sponsored German Township project, which involved raising roads because of ongoing flooding. The court found FEMA's incomplete specifications caused Lakeview Excavating to purchase additional materials and provide additional labor and equipment. Following its rigid funding process, FEMA delayed payment to Lakeview Excavating until the project was complete. These complications caused Lakeview Excavating to fall behind on other projects, including a North Dakota Department of Transportation project. As a result, the NDDOT assessed $165,000 in liquidated damages against Lakeview Excavating.

[¶19] The district court found Lakeview Excavating effectively ceased operations in 2014. Its revenue was $163,683, and its operating expenses were $216,875. The company sold its equipment at auction for $336,141. Its net loss for the year was $9,469. The court found Lakeview Excavating was insolvent by the end of 2014.

[¶20] The district court found Lakeview Excavating had procured liability insurance for each operating year for potential tort liability to third parties as

a result of its operations, including the 2012 construction season when it committed the torts against the Taszareks. Welken testified Lakeview Excavating's insurance carrier ultimately denied coverage, leaving the company exposed to a judgment.

[¶21] The district court determined the problems with the German Township project led to Lakeview Excavating's financial downturn, and thus it was the company's operating losses, not insufficient capitalization, that caused it to become insolvent. *Cf. Coughlin Constr.*, 2008 ND 163, ¶ 22 (concluding district court's piercing of the corporate veil was not clearly erroneous, in part, because the corporation's downturn was largely attributable to the shareholders' withdrawing of funds, not the operating losses it sustained in a project). Ultimately, the court found Lakeview Excavating was not undercapitalized at the time of formation and was adequately capitalized for its stated corporate undertaking as an excavation contractor, noting its profits from 2010 to 2012. This finding is not clearly erroneous.

B

[¶22] In considering the insolvency of the debtor corporation at the time of the transaction in question, the parties disagree as to the "transaction in question." Welken contends the transaction in question is Excavating's entry onto the Taszareks' property in the summer of 2012. The Taszareks assert insolvency is measured at the time of judgment being originally entered against Lakeview Excavating in 2015, citing to *Axtmann* and *Coughlin Construction*.

[¶23] In *Axtmann*, the district court pierced the corporate veil and found the debtor corporation "insolvent at the time of the [creditors'] judgment and for years [before] because it was unable to pay its normal debts and relied upon [the sole shareholder's] personal credit to operate." 2007 ND 179, ¶ 18. This Court affirmed the district court's decision to pierce the corporate veil. *Id.* at ¶ 24. In *Coughlin Construction*, we upheld the district court's decision to pierce the corporate veil. 2008 ND 163, ¶ 30. On insolvency, the district court found the debtor corporation "is essentially insolvent and unable to pay the judgment which will be entered against it in this case" because it "currently owns no real estate, very little equipment and few 'hard' assets—and its cash position is only

6

a shadow of what it was before this situation . . . came about." *Id.* at ¶ 24. In neither *Axtmann* nor *Coughlin Construction* did we specify that insolvency must be measured at the time of judgment.

[¶24] In *Jablonsky*, condominium owners, on theories of negligence and breach of warranty, sued the corporate developer of the condominium project and its president to recover damages for a defective retaining wall. 377 N.W.2d at 561. The district court held the corporate developer negligently designed and constructed the retaining wall, which was the proximate cause of the wall's failure, and was also liable under the implied warranty theory. *Id.* The court pierced the corporate veil and held the president personally liable for the damages. *Id.* at 562. The court found that the corporate developer was insolvent for the "vast majority of its existence" and "that at the time the retaining wall, which was one of the last items of construction, was built, [the corporate developer] had no capital, was insolvent, and as a result, 'the Plaintiffs got a cheap and grossly inadequate wall.'" *Id.* at 566. We concluded the court's finding on the insolvency factor was not clearly erroneous, and affirmed its decision to pierce the corporate veil. *Id.* at 566-67.

[¶25] In *Jablonsky*, the time of judgment is not mentioned by the Court. Instead, we upheld the district court's insolvency finding in which the court emphasized the corporate developer was insolvent at the time the retaining wall was built. Thus, *Jablonsky* supports the argument that the transaction in question refers to the tort committed. Here, the district court found Lakeview Excavating was solvent in 2012 when the fieldstones were taken and became insolvent during 2014, before judgment was initially entered on the fieldstones claim. Where, as is the case here, a corporation is solvent when it commits a tort and insolvent before judgment is entered against it on the tort, the district court properly focuses on whether siphoning or other improper actions of the individuals controlling the corporation led to insolvency. *Cf. Trustees of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 195 (3d Cir. 2003) (reasoning that because limiting liability to the capital invested is the purpose of incorporation, insolvency alone does not justify piercing the corporate veil but can invite scrutiny of actions that otherwise would be appropriate). It was not clearly erroneous to consider Lakeview

7

Excavating's insolvency at the time of the "transaction in question" by reference to the entry on the Taszareks' property.

## C

[¶26] The Taszareks argue the district court erred in finding Lakeview Excavating observed corporate formalities, maintained corporate records, and installed functioning officers.

[¶27] The district court found Lakeview Excavating filed articles of incorporation with the North Dakota Secretary of State, held an organizational meeting, installed officers and directors, issued shares of stock, established a principal place of business, held a shareholders' meeting in which the company elected to be taxed as a Subchapter S corporation, filed annual reports with the Secretary of State from 2011-2015, and held annual meetings from 2011-2015 during which it elected directors and ratified actions taken by the board of directors since the previous annual meeting. The court found Lakeview Excavating kept corporate minutes, documented resignations, and filed separate tax returns from other companies that Welken owned in whole or in part. The court found Lakeview Excavating documented loans from Welken's father and Lakeview Trucking to Lakeview Excavating, and loans from Lakeview Excavating to Lakeview Aviation, Inc., which was a company owned by Welken and his wife. We conclude the court did not err in finding Lakeview Excavating observed corporate formalities and maintained corporate records.

[¶28] The Taszareks assert Lakeview Excavating "shared" the following with Lakeview Trucking: equipment, employees, jobs, timesheets, credit cards, offices, and a line of credit. The Taszareks cite no authority concluding a corporation fails to observe corporate formalities because it "shared" resources with another legal entity. Further, the record shows that exchanged equipment was documented through loan agreements. Although some employees worked for both Lakeview Excavating and Lakeview Trucking, the record supports a finding they performed work for only one company at any given time. Welken testified Lakeview Trucking would work on the same jobsite as Lakeview Excavating when Lakeview Trucking was a subcontractor on the project. Lakeview Excavating's bookkeeper, Lisa Amundson, testified Lakeview

8

Excavating and Lakeview Trucking had separate timesheets. Amundson testified that when employees used the incorrect timesheet, she would correct the company header accordingly. Anthony Ernst, a former employee of Lakeview Excavating, testified he used a credit card labeled "Lakeview Trucking" for expenses of Lakeview Excavating. However, he acknowledged he did not perform the bookkeeping services. The record indicates the parties shared an office building, and the district court found they shared a line of credit. The district court did not find it unusual for two corporations having the same owner and several of the same employees to share the same building. As noted above, the court found Bank Forward provided Lakeview Excavating a $375,000 line of credit, which it shared with Lakeview Trucking. The court found the line of credit was secured by assets of both Lakeview Excavating and Lakeview Trucking.

[¶29] The Taszareks contend the district court erred by finding Lakeview Excavating installed functioning corporate officers. The court found Welken was the sole shareholder, president, and chairperson of the board of directors and was in charge of the company's day-to-day operations; Welken's wife, Georgia Welken, was the vice-president of Lakeview Excavating; and Welken's sister, Lisa Amundson, was the secretary/treasurer. The court found Georgia Welken and Lisa Amundson functioned as corporate officers by attending meetings and participating in decisions involving the company, even though neither was involved in the day-to-day operations. Additionally, Lisa Amundson filed documents on the company's behalf, prepared the meeting minutes, and managed the finances. The court did not err in finding Lakeview Excavating installed functioning corporate officers.

D

[¶30] The district court found no credible evidence of Welken siphoning off assets or funds from Lakeview Excavating for his own personal benefit. The court noted Welken had personally guaranteed the Bank Forward line of credit, and Bank Forward required financial statements from Welken, Georgia Welken, Lakeview Excavating, Lakeview Trucking, and Lakeview Aviation, which were prepared by an independent accountant.

9

[¶31] The Taszareks argue Lakeview Trucking loaned Welken $105,172 in 2011, and no evidence was submitted showing the loan had ever been paid back. Because this is an alleged loan from Lakeview Trucking, not Lakeview Excavating, the loan is irrelevant to whether Welken was siphoning Lakeview Excavating's funds. Additionally, the Taszareks contend that "a large number of assets that were under the control of [Lakeview] Excavating and [Lakeview] Trucking made their way to Southeast [Enterprises, Inc.]; a company owned first by Welken's father, and subsequently, by Welken's wife." The Taszareks do not specify which Lakeview Excavating assets were transferred to Southeast Enterprises. The district court found Lakeview Trucking was the owner of these trucks and equipment, and Southeast Enterprises purchased them for fair value.

[¶32] The Taszareks assert that in 2013 Lakeview Excavating loaned $20,000 to Lakeview Aviation, and Welken took a distribution of $18,117 and received "officer wages" of $35,513. The Taszareks do not cite any authority holding that a documented loan or relatively modest shareholder distributions and wages are akin to siphoning the company's funds, nor do they identify in the record any evidence showing Lakeview Excavating or Welken took these actions in response to being sued by the Taszareks.

[¶33] In *Coughlin Construction*, the district court found the dominant shareholder siphoned funds when the company paid him $124,518 in the form of bonuses, dividends, and repayment of undocumented "loans" over the course of ten months. 2008 ND 163, ¶ 25. The court found these transactions occurred after the company was on notice of the claim against it and at a time when the company was "experiencing significant financial losses." *Id.* We concluded, "The district court's findings depict a dominant shareholder of a corporation who, through the issuance of dividends and bonuses and the repayment of undocumented 'loans,' attempted to bleed the corporation of assets so it would not be able to satisfy a known corporate liability." *Id.* at ¶ 30.

[¶34] In *Coughlin Construction*, the dominant shareholder deliberately took funds to avoid payment of liabilities. Here, the record shows Welken's "officer wages" were owed to him as an officer of the company. Welken testified this amount was the prorated portion of his salary and he stopped taking his

salary in 2013 because of the company's financial downturn. Although the shareholder distribution of $18,117 may merit some scrutiny, the Taszareks have not identified any evidence showing Lakeview Excavating or Welken issued this distribution to Welken to avoid satisfying Lakeview Excavating's liability to the Taszareks. We conclude the district court did not err in finding Welken did not siphon funds from Lakeview Excavating.

E

[¶35] The Taszareks argue there is an element of injustice, inequity, or fundamental unfairness because Welken would escape personal liability for doing business as a corporate entity. We have recognized, "Organizing a corporation to avoid personal liability is a legitimate goal and is one of the primary advantages of doing business in the corporate form." *Axtmann*, 2007 ND 179, ¶ 12. The district court found Lakeview Excavating operated profitably from 2010 to 2012, and became insolvent owing to operating losses derived from the German Township project. Under these facts and circumstances, we conclude the district court was not clearly erroneous in its finding that the Taszareks had not established an essential element of injustice, inequity, or fundamental unfairness to permit piercing the corporate veil.

IV

[¶36] We affirm the judgment, concluding the district court did not abuse its discretion by holding an evidentiary hearing, or err in finding Lakeview Excavating was not the alter ego of Welken.

[¶37] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Lisa Fair McEvers
Jerod E. Tufte

11

**Crothers, Justice, concurring specially.**

[¶38] I agree with the results in this case and with most of the majority's rationale supporting these results. I write separately to reiterate my disagreement with this Court's prior application of the "undercapitalization" analysis used in corporate veil piercing cases, which we do not expressly abandon here. *See Axtmann v. Chillemi*, 2007 ND 179, ¶¶ 40-41, 740 N.W.2d 838 (Crothers, J., concurring in part and dissenting in part). In prior cases, any insolvent corporation was per se undercapitalized. While undercapitalization at insolvency is true as a matter of fact, it is an unhelpful conclusion when deciding whether to pierce a corporate veil because the adequacy of capitalization and insolvency are separate legal inquiries.

[¶39] Here, the majority cites the rule for piercing a corporate veil, majority opinion, ¶ 9, and the *Axtmann* case, but then correctly, I believe, examines the debtor corporation's capitalization at both formation and again if the scope of business materially changed. *See* majority opinion, ¶¶ 14-21. Doing so it has properly recognized the separation between inquiries into capitalization and insolvency.

[¶40]  Daniel J. Crothers
      Jon J. Jensen, C.J.