FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporate instrumentality and agency of the United States, Plaintiff and Appellee,

v.

Lance K. MORQUE, Michael Blackmun, Jack Caldis, and Himax Corporation, a North Dakota Corporation, Defendants and Appellants,

and

George M. Watkins, Tracy E. Doe, John T. McGarry, First National Bank in Grand Forks, a North Dakota corporation, and All persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants.

Civ. No. 10821.

Supreme Court of North Dakota.

Aug. 15, 1985.

Gordon Caldis, of Caldis, Arneson & Tingum, Grand Forks, for defendants and appellants.

Douglas P. Goetz, of Nelson, Kalash & Molenaar, Grand Forks, for plaintiff and appellee.

VANDE WALLE, Justice.

Lance Morque, Michael Blackmun, Jack Caldis, and Himax Corporation[1] appealed from a district court judgment entered in an action to foreclose two real estate mortgages in which the district court granted an injunction preventing Himax from attempting to transfer a liquor license to any party other than one designated by Federal Savings and Loan Insurance Corporation.[2] We affirm.

In February 1981, Morque, George Watkins, Tracy Doe, and John McGarry, a real estate partnership, approached First Federal Savings and Loan of Grand Forks and Minot [First Federal] with plans for renovating the main floor of a three-story building in Grand Forks into a bar. At that time, the main floor was occupied by the Chamber of Commerce and the second and third floors were used for 16 apartments. The building was appraised at $250,295 assuming use of the main floor as a bar. On April 23, 1981, Morque, Watkins, Doe, and McGarry executed a promissory note to First Federal for $206,000 secured by a short-term mortgage on the real estate and building. The mortgage was duly recorded with the register of deeds. On April 24, 1981, Morque, Watkins, Doe, and McGarry, as general partners of the real estate partnership, and First Federal executed an unrecorded agreement which provided:

---

1. During oral argument counsel for appellants stated that he was representing only Blackmun, Caldis, and Himax. Unless the context requires otherwise, these parties will be collectively referred to as appellants.

2. The action was initially commenced by First Federal Savings and Loan Association of Grand Forks and Minot, which later merged with Midwest Federal Savings Bank. The loans have been taken over by Federal Savings and Loan Insurance Corporation.

"WHEREAS, First Federal Savings and Loan Association of Grand Forks and Minot, is making a loan to the undersigned in the amount of Two Hundred and Six Thousand Dollars ($206,000) and taking a mortgage as security therefore, and,

"WHEREAS, The undersigned will operate a bar and lounge and sell liquor at retail within the City of Grand Forks, North Dakota, and will be issued a liquor license by the City of Grand Forks, North Dakota, in the name of the undersigned, and,

"WHEREAS, First Federal require[s] security from the undersigned that in case of foreclosure of said mortgage loan, or assignment by the undersigned of said mortgage, or transfer or other disposing of said liquor license issued to them,

"NOW, THEREFORE, the undersigned hereby agree that if said mortgage is foreclosed by First Federal, the undersigned agree to do every thing necessary and proper to assign and transfer any liquor license that may be issued to them for liquor and beer sale on the premises named in said mortgage, and the undersigned further agree to transfer said liquor license issued to them to any party designated by First Federal upon default of said mortgage payments by the undersigned to First Federal, or by the institution of a foreclosure action in district court to foreclose said mortgage and will perform hereunder upon written request by First Federal to them. The liquor license issued shall be on the premises known as 105–107 North 3rd Street, Grand Forks, North Dakota."

In June of 1981, Himax was formed to hold the liquor license for the bar in its name to avoid possible dram-shop liability and to reduce tax liability. Morque, Watkins, Doe, McGarry, and Jack Caldis were the initial stockholders of Himax. The initial officers of Himax were Morque as president, Watkins as vice-president, and Doe as secretary, and the initial directors were Morque, Doe, McGarry, and Watkins. McGarry held a liquor license for the Riviera Lounge, another Grand Forks bar, and before Himax was incorporated, Morque, in his capacity as president of Himax, requested that the Grand Forks City Council transfer the liquor license from the Riviera Lounge to Himax. The liquor license was transferred to Himax effective August 3, 1981, and it held the liquor license, operated the bar, and leased the main floor of the building from the real estate partnership.

In November 1981, Watkins and Morque signed an additional mortgage and promissory note for $22,000 and a financing statement was filed covering furniture, fixtures and inventory in the bar.

The stock of Himax changed hands several times with the ultimate result of Blackmun and Caldis each owning 105 shares and Metropolitan Federal Savings and Loan Association holding Watkins's 90 shares as escrow agent. After several transactions, including quitclaim deeds from Watkins, Doe, and McGarry, Morque ultimately became sole owner of the real estate.

When the bar did not generate sufficient cash flow to make the required mortgage payments, First Federal initiated foreclosure proceedings on the two mortgages. On June 28, 1983, the district court granted First Federal's request for a temporary injunction to prevent transfer of the liquor license by Himax to any party other than one approved by First Federal pending disposition of the action. After a bench trial, the district court granted the foreclosure of the two mortgages on the property. The district court concluded that the agreement executed by Morque, Watkins, Doe, and McGarry on April 24, 1981, was binding on Himax and continued the injunction to prevent the transfer of the liquor license to a party other than one designated by First Federal.

The principal issue raised by the appellants is whether or not the trial court erred in granting the injunction restricting the transfer of the liquor license pursuant to the April 24, 1981, agreement. The appellants contend that the liquor license agreement is void because a liquor license is a

privilege or permit and not a property right which can be mortgaged or assigned.

North Dakota law does not specify whether or not a liquor license is a property right. Section 5–02–09, N.D.C.C., provides that local governing bodies may regulate or restrict the operation of liquor licenses and Section 40–05–01(29), N.D.C.C., provides that municipalities have the power to regulate and license the sale of alcoholic beverages.

■ Generally, a liquor license is a mere personal and temporary permit or privilege and not a natural right and confers no irrevocable, vested, or proprietary rights upon the licensee which cannot be revoked or terminated by the licensing authority. 45 Am.Jur.2d, *Intoxicating Liquors*, § 115 (1969). A liquor license is not a property right in a constitutional sense or within the meaning of the tax laws. 45 Am.Jur.2d, *Intoxicating Liquors*, § 117 (1969).

■ Although a liquor license is a privilege vis-a-vis the licensing authority, it has qualities of a property right as to third

parties because the licensing authority may limit the number and location of · liquor establishments. *State v. Saugen*, 283 Minn. 402, 169 N.W.2d 37 (1969); 45 Am. Jur.2d, *Intoxicating Liquors*, § 117 (1969). Furthermore, a liquor license generally may be transferred with the approval of the licensing authority. 45 Am.Jur.2d, *Intoxicating Liquors*, § 115 (1969).[3]

Although the Grand Forks City Code's definitions of license use the word "permits,"[4] that use relates to the effect of holding a liquor license and does not imply that a liquor license does not have the quality of a property right.

We believe that the limitations on the number of liquor licenses available[5] from a licensing authority and the ability to transfer a liquor license with the approval of a licensing authority reflects that, at a minimum, a liquor license has the qualities of an intangible property right[6] with respect to third parties. The very fact that the appellants contest so vigorously the injunction prohibiting the transfer of the license

3. Grand Forks City Code § 22–0214 provides: "Transfer of License Prohibited

"Notwithstanding the provisions of 22–0237, no license for the sale of alcoholic beverages shall be transferred either as to licensee or as to premises without first making application to and receiving the approval of the city council. A transfer of license, as to licensee, shall require the payment, to the City of Grand Forks, of a transfer fee in the amount of three times the annual license fee for such license and, in addition, transferee shall pay the annual fee as established by Section 22–0205.

"In the event a transfer is made in consequence of a conveyance contingent upon satisfaction of periodic payments by the purchaser, no transfer fee shall be required for any transfer back to the prior licenseholder resulting from any default of the purchaser upon the contract calling for periodic payments."

4. Grand Forks City Code § 22–0201 provides in part:

"For the purpose of this ordinance:
 *    *    *    *    *    *
"(11) 'General Liquor and Beer License' shall mean a license that *permits* the sale of all alcoholic beverages on an 'on-sale' and 'off-sale' basis; provided, however, the holders of 'general liquor and beer licenses' must provide both 'on-sale' and 'off-sale' services.
"(12) 'Hotel-Motel License' shall mean a special license that *permits* the sale of all

alcoholic beverages on an 'on-sale' and 'off-sale' basis.
 *    *    *    *    *    *
"(16) 'General Beer License' shall mean a license that *permits* the sale of beer on an 'on-sale' and 'off-sale' basis." [Emphasis added.]

5. Grand Forks City Code § 22–0211 limits, on the basis of population of the City, the number of licenses to be issued.

6. Presumably because of their position that a liquor license is a privilege or a permit and not a property right which can be mortgaged or assigned, the appellants have not argued that the agreement was a transaction intended to create a security interest [Section 41–09–02(1)(a), N.D.C.C.], in a general intangible [Section 41–09–06, N.D.C.C.], which should have been perfected in order to prevail against someone who gave value without knowledge of the security interest and before it was perfected [Section 41–09–22(1)(d), N.D.C.C.]. We therefore express no opinion on that issue here. We note, however, that a liquor license has been characterized as a general intangible, under the Uniform Commercial Code, and that other jurisdictions have described a liquor license as an intangible without referring to the Uniform Commercial Code. See *Tomb v. LaValle*, 298 Pa.Super. 75, 444 A.2d 666 (1982), and cases cited therein.

to any party other than one designated by Federal Savings and Loan Insurance Corporation may be the best evidence of the value of a liquor license as an intangible property right.

The appellants contend that First Federal has no authority in its charter, bylaws, or in its regulations to accept a liquor license as security for a loan. However, our research has not revealed nor has our attention been directed to any provision prohibiting First Federal from accepting the liquor license as additional security for the loan.

■ We conclude that a liquor license has the qualities of an intangible property right as to third parties and that the April 24, 1981, liquor license agreement was not invalid.

The appellants contend that even if the liquor license agreement is valid, it may not be enforced against them because they did not sign or have knowledge of the agreement at the time they acquired their interest in Himax.

The district court's memorandum decision provides, in substance, that the purpose of the loans was to finance remodeling the building into a bar; that the four signers of the April 24, 1981, liquor license agreement intended that they would not use the license at another location; that the four signers intended that Himax would be bound by the agreement; that Himax was formed by the same four individuals who signed the liquor license agreement; that the agreement of the four signers/incorporators became the agreement of Himax; and that the corporation continued to be bound by the agreement even though there were new stockholders and officers. The district court's judgment enjoined Himax from attempting to transfer the liquor license to a party other than one designated by First Federal.

■ A corporation and its shareholders are recognized as separate and distinct entities. *Airvator, Inc. v. Turtle Mountain Manufacturing Co.*, 329 N.W.2d 596 (N.D.1983). However, that separate identity may be disregarded to avoid injustice. *Schriock v. Schriock*, 128 N.W.2d 852 (N.D.1964). Generally, knowledge of the

board of directors, officers, or agents of a corporation is imputed to the corporation. *Matter of Pubs, Inc. of Champaign*, 618 F.2d 432 (7th Cir.1980); *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.*, 427 F.2d 862 (4th Cir.1970). See 19 Am.Jur.2d, *Corporations*, §§ 1263, 1265 (1969). Furthermore, where a corporation with knowledge of a preincorporation contract that it might itself make accepts the benefits therefrom, it does so subject to the burdens that go with such a contract. *Bryan v. Northwest Beverages*, 69 N.D. 274, 285 N.W. 689 (1939). Ordinarily, the knowledge of the promoters of the corporation cannot be imputed to the corporation, but an exception to the rule exists where, as in this case, the promoters become directors and stockholders of the corporation or are the controlling stockholders. See 18 Am.Jur.2d, *Corporations*, § 123 (1965).

■ In this instance Morque, Watkins, Doe, and McGarry executed the liquor license agreement in their own names. The agreement stated that they would have the license issued in their names. However, Morque applied to the Grand Forks City Council in his capacity as president of Himax to have the license transferred from the Riviera Lounge [McGarry's bar] to Himax. Morque testified that Himax was not incorporated to contravene the liquor license agreement and the district court found that the four signers of the agreement intended that Himax would be bound by it. The original Board of Directors and officers of Himax were the same four individuals who signed the liquor license agreement. Their knowledge of the liquor license agreement is imputed to Himax regardless of any subsequent change in ownership or management.

The liquor license was in Himax's name, and the district court's decision specifically limited only the holder of the license, Himax, from attempting to transfer it to a party other than one designated by First Federal. We agree with the district court's decision that the liquor license agreement became an agreement of Himax and that Himax continues to be bound by the agree-

ment even though it is now owned by different shareholders with different officers and directors.

We conclude that the trial court did not err in granting the injunction restricting Himax from transferring the liquor license. Accordingly, the district court judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.