**CHAPMAN PLACE ASSOCIATION, INC., Respondent,**

v.

**Thomas W. PROKASKY, et al., Defendants,**

**Shaw–Lundquist Associates, Inc., Appellant.**

**HAYFIELD WINDOW AND DOOR COMPANY, Third–Party Plaintiff,**

v.

**WELLS ALUMINUM CORPORATION, Third–Party Defendant.**

No. C7–93–271.

Court of Appeals of Minnesota.

Nov. 9, 1993.

Review Denied Jan. 24, 1994.

David J. McGee, Thomsen & Nybeck, P.A., Edina, for Chapman Place Ass'n, Inc.

Robert M. Austin, Lauris A. Heyerdahl, Austin & Abrams, Minneapolis, for Shaw–Lundquist Associates, Inc.

Considered and decided by ANDERSON, C.J., and NORTON and THOREEN *, JJ.

## OPINION

ANDERSON, Chief Judge.

The Chapman Place Association (Association), which governs the Chapman Place Condominiums (Chapman Place), sued Shaw–Lundquist Associates, Inc. (Shaw–Lundquist), the construction contractor, for defective construction. By special verdict, a jury found in favor of the Association and awarded damages of $197,002, of which $129,510 was attributed to Shaw–Lundquist. The trial court limited the Association's recovery to owners who purchased condominium units before October 1988, the date when the defects to the common elements became apparent. The court issued a final judgment against Shaw–Lundquist for $89,919.45.

Shaw–Lundquist appealed, seeking further reduction of damages. The Association filed a notice of review on the damage reduction issue. We conclude the trial court erred when it reduced the damages attributable to Shaw–Lundquist. We affirm in part and reverse in part.

## FACTS

Thomas Prokasky, an architect, formed Waterford Properties, Inc. (Waterford) to construct Chapman Place, a residential development with 27 condominium units. Shaw–Lundquist, the construction manager, built Chapman Place during 1985 and 1986. Fred Shaw, Shaw–Lundquist's owner and president, holds a 25% interest in Waterford. Shaw is also a board member of the Association. To finance the construction of Chapman Place, Union Bank and Trust Company loaned Waterford $2,400,000, with Minneapolis Employees Retirement Fund (MERF) as a 100% participant in the loan. Waterford's $2,400,000 note was secured by a mortgage on Chapman Place, an assignment of leases and rents, and the personal guarantees of four people, including Fred Shaw and Thomas Prokasky.

On March 25, 1986, Waterford, as declarant, executed the Enabling Declaration for the Chapman Place Condominium Association (Declaration). Waterford filed the Declaration with the Hennepin County Recorder.

In August 1988, following Waterford's default on the note and mortgage, MERF agreed to take a deed in lieu of foreclosure for seven unsold condominium units. Waterford released MERF from all claims relating to the loan. Concurrently, MERF released Shaw–Lundquist and Fred Shaw from any and all past, present, or future claims with respect to Chapman Place.

The Association filed its complaint on July 31, 1990, alleging that Shaw–Lundquist had negligently constructed Chapman Place, causing extensive water leakage and other damage. The complaint alleged numerous defects involving balconies, windows, plazas, planters, siding, roofing, and the post-tension structural slab. The complaint also alleged negligence, breach of warranties under the

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

Minnesota Uniform Condominium Act (condominium act), and breach of warranties under the Minnesota housing warranties statute. *See* Minn.Stat. §§ 515A.1–101–.4–117 (1986); Minn.Stat. §§ 327A.01–.08 (1986).

The jury determined that all defendants were negligent. Of the $197,002 damages awarded, the jury attributed $32,112 to Thomas Prokasky, $129,510 to Shaw–Lundquist, $18,050 to Hayfield Window and Door Company, $17,330 to Wells Aluminum Corporation, and no damages to Waterford. The jury found that as of October 1988, a prospective purchaser would have had notice of the defects in the common elements. The jury also found that Fred Shaw did not act in the condominium owners' best interests when he executed Shaw–Lundquist's release with MERF.

The parties filed posttrial motions regarding damages and the number of condominium units conveyed after October 1988. In its final order for judgment, the trial court reduced the $129,510 judgment attributed to Shaw–Lundquist by 11/27ths to $89,919.45. This reduction corresponded to 11 of the 27 condominium units conveyed after October 1988, the time when purchasers were assumed to have had notice of defects. The trial court also held invalid a liability release between the mortgagee, MERF, and Shaw–Lundquist. At this time, the court concluded that MERF was not a voluntary purchaser with notice of defects when it accepted a deed in lieu of foreclosure.

## ISSUES

I. Did the trial court err by reducing by 11/27ths a condominium association's jury award against a negligent contractor because 11 condominium units were purchased after defects in the common elements became apparent?

II. Did the trial court err in concluding that where a construction contractor's owner is a board member of the condominium association, the mortgagee's release of the contractor and its owner is adverse to the association's interests and therefore unenforceable?

## ANALYSIS

### I. *Reduction of Damages*

■ The question of whether a court should reduce damages to a condominium association to reflect the number of condominium units purchased after defects in common elements become apparent is a question of law which this court reviews de novo. *Sorenson v. St. Paul Ramsey Medical Center,* 457 N.W.2d 188, 190 (Minn.1990).

The trial court based the reduction of damages on the rationale of a North Dakota condominium case and a Minnesota case involving a townhome association's lawsuit against the developer for defective construction. *Jablonsky v. Klemm,* 377 N.W.2d 560 (N.D.1985); *Arden Hills North Homes Ass'n v. Pemtom, Inc.,* 475 N.W.2d 495 (Minn.App. 1991), *aff'd as modified,* 505 N.W.2d 50 (Minn. July 19, 1993). Both cases are distinguishable. *Arden Hills* involved a townhome development rather than a condominium development, and the *Jablonsky* court applied a North Dakota condominium statute which differs from the condominium act applicable here. *Cf.* Minn.Stat. §§ 515A.1–101–.4–118 (1986) and N.D.C.C. §§ 47–04.1–01–.1–13 (1978). Reduction of damages is inappropriate under the condominium act. Therefore, we reverse.

■ The condominium act defines "condominium" as

real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of these portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners.

Minn.Stat. § 515A.1–103(7) (1986). " 'Unit' means a portion of the condominium, * * * designated for separate ownership." Minn. Stat. § 515A.1–103(19) (1986). "Common element" is defined as "all portions of a condominium other than the units." Minn.Stat. § 515A.1–103(4) (1986). A condominium unit purchaser acquires separate individual ownership of the interior of the unit and is allocated an undivided fractional interest in the common elements, including the exterior

of each unit. *See* Minn.Stat. §§ 515A.1–103(7); 515A.2–102 (1986); *see also Regency Condominium Ass'n v. State, County of Ramsey,* 410 N.W.2d 321, 322 (Minn.1987). Each condominium unit owner has an undivided fractional share in the common elements that he or she holds as a tenant in common. *See Meadowbrook Condominium Ass'n v. South Burlington Realty Ass'n,* 152 Vt. 16, 565 A.2d 238, 241 (1989); *see also* Wayne S. Hyatt, *Condominium and Homeowner Ass'n Practice,* § 1.05(c)(1) (1988).

Under the condominium act, an association may sue on behalf of two or more unit owners on matters affecting the condominium. Minn.Stat. § 515A.3–102(a)(4) (1986); *see also Regency,* 410 N.W.2d at 322 (condominium association may bring one action on behalf of all unit owners challenging unfair tax assessment). In its complaint, the Association alleged breach of warranty under the condominium act and under the Minnesota housing warranties statute, Minn.Stat. §§ 327A.01–.08 (1986) (ten year warranty survives passage of title for "major construction defects").

■ The condominium act provides an implied warranty in Article 4, "Protection of Purchasers":

(b) A declarant warrants to a purchaser that a unit and the common elements in the condominium are structurally suitable for the ordinary uses of real estate of its type and that any improvements or repairs made or contracted for by the declarant or made by any person in contemplation of the creation of the condominium, will be:

(1) free from defective materials; and

(2) constructed in accordance with applicable law, according to sound engineering and construction standards, and in a workmanlike manner.

Minn.Stat. § 515A.4–112(b) (1986). The implied warranty survives passage of title from original purchasers to subsequent purchasers. "Any conveyance of a unit transfers to the purchaser all of any declarant's implied warranties." Minn.Stat. § 515A.4–112(f) (1986).

The condominium act's statute of limitations for breach of warranty is six years after the completion of the common elements or after the first condominium unit is sold.

(a) A judicial proceeding for breach of any obligation arising under * * * section 515A.4–112 must be commenced within six years after the cause of action accrues.

\* \* \* \* \* \*

(b) Subject to subsection (c), a cause of action * * * accrues * * * 2) as to each common element, the later of (i) the time the common element is completed, (ii) the time the first unit in the condominium is conveyed to a bona fide purchaser, or (iii) as to a common element within any additional real estate or portion thereof the time the first unit therein is conveyed to a bona fide purchaser.

Minn.Stat. § 515A.4–114(a), (b)(2) (1986).

■ Shaw–Lundquist completed Chapman Place and the first unit was sold in April 1986. The Association filed its lawsuit on July 30, 1990, well before the six-year statute of limitations had run. The Association timely filed its complaint on behalf of all condominium unit owners and the implied warranty which survives passage of title protects all the owners, including those who purchased units after October 1988 when the defects in common elements became apparent.

In the *Arden Hills* case, the townhome association's lawsuit sought damages for defective siding attached to the townhome units. *Arden Hills,* 475 N.W.2d at 497. Although the association did not own the siding, the association was responsible for its maintenance and repair, and commenced the lawsuit on behalf of its members. *Id.* The court presumed that homeowners who bought townhomes after a certain date had notice of the defects. *Id.* at 501. Applying the rule of caveat emptor, the court concluded that because later purchasers assumed the risk in purchasing townhomes with defective siding, they were not entitled to recovery. *Id.*

■ The *Arden Hills* damage apportionment rationale does not apply here because condominium owners and townhome owners hold different property interests in the common elements of their respective properties. In a townhome development, each home-

owner owns fee title to the townhome unit and the underlying plat, but has no direct ownership in the common elements. *Condominium and Homeowner Ass'n Practice,* 1.05(c)(1). Common elements are owned by an incorporated homeowners' association, of which each townhome owner is a mandatory member. *Id.* Therefore, the *Arden Hills* case did not involve damages to common elements in which each unit owner had an undivided fractional share as a tenant in common.

■ Furthermore, in this case, the condominium act, in conjunction with the Declaration and the Association's by-laws, governs the rights of the Association and condominium unit owners. *See Regency,* 410 N.W.2d at 322. In contrast, generally there is no statute governing townhome developments. *Condominium and Homeowner Ass'n Practice,* § 1.05(c)(2). Townhome association members depend on a declaration, by-laws, and the common law of real property for their rights and powers. *See id.* at §§ 1.05(c)(1), (2). Unlike condominium purchasers, townhome purchasers do not have the benefit of the express statutory protections of the condominium act. *See* Article 4: Protection of Purchasers, Minn.Stat. §§ 515A.4–101–.4–118 (1986).

In the *Jablonsky* case, the North Dakota Supreme Court denied recovery to condominium unit purchasers who were presumed to have had notice of defects in the common elements. *Jablonsky,* 377 N.W.2d at 570. But the North Dakota condominium statute differs significantly from Minnesota's condominium act. First, the North Dakota statute does not authorize an association to sue on behalf of condominium unit owners for damages to the common elements. *Cf.* N.D.C.C. § 47–04.1–07 (1978) and Minn.Stat. § 515A.3–102(a)(4); *Jablonsky* at 569. Second, unlike the condominium act, the North Dakota statute contains no express or implied warranties, nor does it provide that warranties survive the passage of title from the original purchaser to subsequent ones. *Cf.* Minn.Stat. §§ 515A.4–111(c), 515A.4–112(f). Therefore, in *Jablonsky,* the court applied the common law of real property to determine condominium unit owners' rights as tenants in common. *Jablonsky* at 569–70.

■ The *Jablonsky* court noted that the condominium unit owners' rights in the common elements were technically several, as distinguished from joint. *Id.,* at 570. In contrast, when property is held in tenancy in common, there is unity of possession whereby each owner has an undivided interest and cannot claim any specific portion of the property until partition. John E. Cribbet, *Principles of the Law of Real Property,* 103 (1975). The court then determined that later condominium unit purchasers had notice of the construction defects, and their assumption of the risk barred recovery. *Jablonsky,* 377 N.W.2d at 570. Once the court determined the total damages necessary to remedy the defect, it reduced the damage award in proportion to the number of units purchased after the defect became apparent. *Id.* at 562.

In Minnesota, the condominium act authorizes an association to sue on behalf of two or more condominium unit owners on matters affecting the condominium, Minn.Stat. § 515A.3–102(a)(4), and provides an implied warranty that survives passage of title from the original condominium unit purchasers to subsequent purchasers, Minn.Stat. § 515A.4–112(b), (f). Therefore, in this case, it is inappropriate to apply the common law of tenancy in common to determine condominium unit owners' rights to recover damages to common elements. Here, the condominium act mandates that the Association, when suing on behalf of all Chapman Place condominium owners, recover the full amount of damages attributed to Shaw–Lundquist for defects in the common elements.

Other jurisdictions have also declined to apportion the damages among condominium owners holding undivided interests in the common areas. *See, e.g., Stony Ridge Hill Condominium Owners Ass'n v. Auerbach,* 64 Ohio App.2d 40, 410 N.E.2d 782, 786 (1979) ("repair of only one-sixth of the roof would leave the roof in the same leaky condition"). The Florida Court of Appeals stated:

> We hold that as to common elements, the [condominium owners] may recover the entire damages on either theory [implied

warranty or negligence], albeit the subsequent or remote purchasers will benefit thereby. To conclude otherwise and apportion the damages would penalize the original purchasers. In order for [the owners] to receive the benefit of their bargain and be made whole, the amount of damages awarded must equal the sum necessary to correct the condition.

*Drexel Prop., Inc. v. Bay Colony Club Condominium, Inc.,* 406 So.2d 515, 519–20 (Fla. Dist.Ct.App.1981); *but cf. Meadowbrook Condominium Ass'n v. South Burlington Realty Ass'n,* 565 A.2d 238, 241 (Vt.1989) (damages for breach of warranty apportioned for condominium owners who purchased after common element defect became apparent).

In this case, the trial court's reduction of damages for condominium units purchased after October 1988 creates a windfall for Shaw–Lundquist. Reduction of damages on this basis could encourage negligent contractors to prolong litigation with the hope that additional units conveyed will reduce the amount of recoverable damages. Therefore, after an independent review of the record in light of the condominium act, we conclude that the trial court erred in reducing damages. *See Sorenson,* 457 N.W.2d at 190 (appellate court has de novo review of questions of law).

Having concluded that the trial court erred in reducing the damage award by the number of units purchased after October 1988, we decline to address the issue of whether MERF was a voluntary purchaser with notice of defects. We also decline to determine whether the trial court erred in calculating the number of units for which damages were reduced.

## II. *Release*

Shaw–Lundquist also sought a reduction of the damage award based on a liability release executed by MERF, the mortgagee. The release was part of MERF's August 1988 agreement to accept from the declarant, Waterford, a deed in lieu of foreclosure for seven unsold condominium units. MERF released Shaw–Lundquist and Fred Shaw from

any and all past, present or future claims, demands, causes of action * * *, liabilities and judgments, known or unknown, liqui-

dated or unliquidated, * * * which MERF ever had, presently has, * * * with respect to the financing, design, construction, marketing and all other aspects of the real estate development known as Chapman Place.

■ In its special verdict form, the jury found that Fred Shaw did not act in the best interests of the condominium unit owners when he obtained MERF's release while he was a board member of the Association. An appellate court will not set aside a jury's answer to a special question unless "it is perverse and palpably contrary to the evidence." *Hauenstine v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn.1984). But this court reviews de novo the trial court's conclusions of law based on those findings. *See Sorenson,* 457 N.W.2d at 190.

■ The condominium act authorizes a court to invalidate unconscionable contracts executed by a declarant or its affiliate. Minn.Stat. § 515A.1–112(a) (1986). The Declaration for Chapman Place also prohibits the declarant, Waterford, from taking action adverse to the Association or the condominium owners.

[T]he declarant covenants to take no action which would adversely affect the rights of the Association with respect to assurances against latent defects in the Property or other rights assigned to the Association, members of such Association, and their successors in interest as their interest may appear, by reason of the establishment of the Condominium.

Declaration, ¶ IX.A.

■ When Fred Shaw obtained MERF's release, he was part-owner of Shaw–Lundquist, vice-president of Waterford, and a member of the Association's board of directors. He had a fiduciary obligation to act in the best interests of the Association and its members. The release protected Shaw–Lundquist from suit by MERF or a subsequent purchaser. The evidence supports the jury's finding that the release was not in the best interests of the condominium owners. Based on that finding, the trial court properly concluded that the release was invalid and

did not provide a basis for reducing the jury's damage award.

### DECISION

We reverse the trial court's reduction of Shaw–Lundquist's damages by 11/27ths from $129,510 to $89,919.45 in accordance with our conclusion that Minnesota's condominium act provides a remedy for all Association members. We affirm the trial court's invalidation of MERF's release of Fred Shaw because it conflicted with the Association's interests. The Association is entitled to recover the full amount of damages of $129,510 attributed to Shaw–Lundquist for defects in the common elements.

Affirmed in part and reversed in part.